## Shepherd *v.* Pittsburgh Provision and Packing Company et al., Appellants.

Argued April 11, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*Clarence A. Patterson,* for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1939:

The only question of law involved upon this appeal by the employer and its insurance carrier in a workmen's compensation case is whether there was competent evidence sustaining a finding by the referee, affirmed by the board, that William Shepherd, claimant below and appellee herein, was totally disabled on April 8, 1937, as the result of injuries received by him on September 28, 1934. Admittedly, claimant, a butcher by trade, suffered certain injuries to his right hand and lower back, during the course of his employment in one of the plants of the packing company on the latter date, when he accidentally slipped and fell upon a stairway. An open agreement for compensation for total disability, at the rate of $14.35 per week, was executed by the. parties and approved by the board under which payments were made from October 5, 1934, until October 10, 1935. The description of the accident as set out in the agreement reads: "Slipped on stairs—bruised and shaken up."

On October 22, 1935, the defendants filed their petition, under the provisions of the second paragraph of Section 413 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as further amended by the

Act of April 13, 1927, P. L. 186, 77 PS §772, for the termination of the agreement upon the ground that the disability of claimant had finally ceased as of October 16, 1935, upon which date he became able to resume his regular employment at the plant—"picking up rumps of beef," weighing twenty to twenty-five pounds, and "taking out the meat over the bone" with knives and saws. The claimant answered he was "not able to return to work yet." At the hearings before the referee on December 19, 1935, and January 9, 1936, the defendants called four medical experts; claimant and an impartial expert appointed by the referee also testified at length.

Under date of January 30, 1936, the referee dismissed the petition to terminate the agreement, but modified it into an award of compensation for a 50% partial disability, at the rate of $7.18 per week, beginning January 10, 1936, and to continue, within the limitations of the statute, until claimant's disability should "cease or change in extent or character." Neither party appealed from this award, and payments were made under it until April 8, 1937.

On that date, claimant, availing himself of the privilege accorded him by the above cited section of the statute, filed his petition for a modification of the award into one for total disability.

The ground assigned was that his disability had increased to such an extent that he was then "totally and permanently disabled." Defendants answered denying that averment. At the hearing before the referee Dr. George J. Wright, a witness at the former hearing, was recalled and additional expert and lay testimony taken.

On May 26, 1937, the referee made findings, three of which read:

"Sixth: The above entitled case came on for hearing May 11, 1937, at which time considerable testimony was taken and your referee, after carefully reviewing

all of the testimony in this case, believes and so finds as a fact that the claimant has made an honest effort to rehabilitate himself, which was the intent and purpose of the referee's awarding compensation for 50% partial disability, to induce the claimant to attempt light work.

"Seventh: Claimant obtained a position with the W. P. A., and remained on the job, intermittently from June 4, 1936 to July 13, 1936, a total of four and two-seventh (4-2/7) weeks, and on July 13, 1936, he was discharged as physically unfit.

"Eighth: That the claimant is now and has been from the time of his injury, totally disabled, which said total disability will continue in the future for a period indeterminate at this time."

Under date of May 26, 1937, the referee, upon the above findings, made an order modifying the award of January 30, 1936, (awarding $7.18 per week beginning January 10th for partial disability), into one for total disability but erroneously inserted therein an illegal retroactive provision to the effect that the payments of $14.35 per week for total disability should be considered as beginning on January 10, 1936. See *Foster v. Mellon Stuart Co. et al.,* 114 Pa. Superior Ct. 311, 173 A. 773.

The maximum extent of the defendants' weekly liability for compensation was fixed by the unappealed from award of January 30, 1936, to continue until its expiration under the general limitation of the statute relative to partial disability, unless sooner changed by one of the methods expressly provided therein.

As stated by KELLER, P. J., in *Kilgore v. State Workmen's Ins. Fund et al.,* 127 Pa. Superior Ct. 213, 219 193 A. 294, "The law contemplates changes in awards ...... corresponding to changes in the condition of disability of the claimant, and the award has no conclusive effect beyond the date of its entry. Of course, the burden is on the one averring a change to prove it."

The section (413) under which defendants sought to terminate the agreement also provides for the modification of an agreement or an award at the instance of an injured employee upon proof, inter alia, that his disability has increased. The only limitations applicable in this case were that claimant's petition be filed within the period of three hundred weeks following the seventh day after the accident and within one year after the date of the last payment of compensation. The present petition was filed in ample time.

The board, in dismissing defendants' appeal from the action of the referee, corrected the error above indicated by directing that the payments for total disability should be resumed as of "April 8, 1937, the date when the petition to modify was filed."

The court below in entering judgment upon the award as thus modified remarked that the medical testimony "as to the total industrial disability of the claimant" was "at variance," but held there was competent evidence upon the record to sustain a finding of total disability in April 1937. If the writer were at liberty to pass upon the credibility of the witnesses and determine the weight of the testimony, he would have difficulty in concluding that claimant is entitled to compensation for more than a 50% partial disability. Undoubtedly claimant has a crippled thumb and index finger on his right hand—both members being permanently stiff and so seriously diminishing the grasping power of his hand as to render him unable to engage in the work he was performing when injured. The clear weight of the medical testimony is that the back injury of which he has complained ever since the accident is so largely imaginary that it would not prevent him from performing the duties of a watchman— an occupation in which he has had experience. The impartial expert said he thinks claimant has "some working capacity"; that he finds no physical reason for all the symptoms of which he complains; that,

in his opinion, he is not "faking totally" but has a nervous disturbance which is not sufficient to prevent him from doing light work; and that 50% is a fair estimate of the extent of his disability.

On the other hand, there is testimony upon the record which prevents us from saying there is *no* competent evidence sustaining the award. The employer has it within its power to offer claimant work of the type its medical experts say he is able to perform. Refusal by the claimant to accept a bona fide offer of such employment would furnish ground for an application by the defendants to the board, for a modification of the award.

The technical questions raised and argued in the respective briefs are sufficiently answered by the findings of the compensation authorities and by what we have said in this opinion.

Judgment affirmed.