## Trostle v. State Workmen's Insurance Fund et al.

*Edward L. Willard,* for claimant.
*Fleming & Litke,* for defendants.

WALKER, P. J., June 9, 1943.—This matter is before the court on an appeal from the decision of the Workmen's Compensation Board refusing the suspension of the compensation payments which had been awarded to James Trostle, claimant, but which were modified so as to provide compensation for the loss of use of one half of claimant's thumb as provided by section 306 (*c*) of The Workmen's Compensation Act of June 2, 1915, P. L. 736.

From this award the State Workmen's Insurance Fund, which was the insurer of the Pennsylvania State

College, the employer, appealed, setting forth the following reasons:

"1. That the learned Workmen's Compensation Board erred as a matter of law in concluding that claimant is entitled to receive compensation for the loss of use of one half of his left thumb, this being contrary to the provisions of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520.

"2. That the learned Workmen's Compensation Board erred in concluding as a matter of law that defendant is not entitled to a suspension of compensation notwithstanding that claimant is receiving wages equivalent to or in excess of those received at the time of the injury.

"3. That the learned Workmen's Compensation Board erred in dismissing defendant's petition for suspension of compensation."

According to the evidence claimant, James Trostle, while in the course of his employment with the Pennsylvania State College as a laborer, suffered an accident on September 8, 1941. On September 26, 1941, the parties entered into a compensation agreement, wherein the accident and nature of the injury were described as follows:

"Operating ensilage cutter, a corn stalk became stuck in machine and in an attempt to loosen the stalk claimant got left thumb in feeder of the machine causing severe laceration and fracture of left thumb."

Compensation was awarded for total disability for an indefinite period. On January 6, 1942, defendant filed a petition to suspend the agreement, alleging that claimant had resumed his former employment and was receiving the same wage as he did prior to the accident. The referee, after hearing, concluded that defendant was not entitled to suspension of compensation payments but was entitled to modification to provide com-

pensation for loss of use of claimant's left thumb, as provided by section 306 (*c*) of the act.

The Workmen's Compensation Board stated the question for determination by them when the appeal was taken from the decision of the referee as follows:

"The sole question for our determination is whether or not claimant suffered a loss of the use of his left thumb, within the meaning of the Workmen's Compensation Act."

In its opinion the Workmen's Compensation Board found that "Dr. H. T. Dale, a general practitioner called as a witness on behalf of defendant, testified that he last examined claimant on November 4, 1941, and found that claimant was unable to flex or extend the distal joint of the thumb. He stated that claimant had normal function of the metacarpal phalangeal joint. He was of the opinion that claimant suffered a 50 percent loss of function of the thumb for industrial use; that there would not be any change of claimant's condition. Dr. Dale was of the belief that claimant is able to use his thumb to exert pressure, although it would be in an awkward manner; that he could use the thumb to pick up certain articles, depending on the weight of the articles; that he could grasp a shovel; and that he could use the thumb as a support, in the same manner he would use an artificial member or stick, if one were substituted for his thumb. The joint between the two phalanges of the thumb is completely ankylosed. There is no evidence indicating any disability to either phalanx, except that the joint between them is stiff."

From these statements of fact the Workmen's Compensation Board concludes that "It is, therefore, our conclusion that claimant has lost the use of the first phalanx of his left thumb."

From an examination of the evidence as well as the exceptions which have been filed by appellant, it appears that there is an agreement between the parties

as to the facts of the case but appellant excepts to the conclusion of law which the Workmen's Compensation Board arrived at from the disclosed facts.

The Workmen's Compensation Board in support of its position refers to section 306 (*c*) of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, 77 PS §513, which provides, inter alia, as follows:

"The loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, and shall be compensated at the same rate as for the loss of a thumb or finger, but for one-half of the period provided for the loss of a thumb or finger.

"The loss of more than one phalange of a thumb or finger shall be considered equivalent to the loss of the entire thumb or finger."

Defendant in its brief sets forth the question involved in the case as follows: "If the distal phalangeal joint of the thumb on a claimant's left hand is completely ankylosed, is he entitled to compensation for the loss of use of one half of the thumb under the provisions of section 306 (*c*) of the Workmen's Compensation Act?" In connection with said question defendant contends that where the physical conditions are such as appear in this particular case the loss of the use of this particular distal phalangeal joint is not compensable because the legislature has failed to include in The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, sec. 306 (*c*), any compensation for the loss of the use of that portion of the thumb. The provision referred to is as follows: "Permanent loss of the use of a hand, arm, foot, leg, eye, finger or thumb shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, finger or thumb." By this amendment the words "for industrial purposes" which had appeared in a former act of assembly were omitted.

In a further paragraph of this same act these words were used: "For the loss of, or permanent loss of the use of, any two or more such members, not constituting total disability . . ." compensation shall be as set forth in said act. By this amendment the words "or the permanent loss of the use of the finger, thumb, hand, arm, foot, leg, toe, or eye, as hereinbefore provided" were omitted. This amendment also provided: "The loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, and shall be compensated at the same rate as for the loss of a thumb or finger . . ." By the amendment the words "less than" appearing after "loss of", as well as the words "provided, however, that the accident involves injury to part of the bone of the phalange", were omitted.

A review of the legislation with reference to this particular section will probably throw some light on the intention of the legislature in the use of the language which they have used from time to time. The original Workmen's Compensation Act of June 2, 1915, P. L. 736, sec. 306 (c), provides:

"For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: For the loss of a hand . . . arm . . . foot . . . leg . . . eye . . ." certain compensation was provided. This section of the act also included the words "Permanent loss of the use of a hand, arm, foot, leg, or eye shall be considered as the equivalent of the loss of such hand, arm, foot, leg, or eye."

By subsequent amendments certain additions for the loss of other members was provided for by the legislature.

The amendment of March 29, 1923, P. L. 48, sec. 1, in addition to those members for which compensation had been provided by prior legislation, included the thumb, first finger, second finger, third finger, fourth

finger, and the first phalange of the thumb, as well as the loss of more than one phalange of the thumb or finger. This legislature also adopted the following language: "For the loss of any two or more such members, or the permanent loss of the use of the hand, arm, foot, leg or eye, as hereinbefore provided . . ." There was no change made in the provision relative to the permanent loss of the use of the member which extended it beyond the hand, arm, foot, leg, or eye.

According to the amendment of April 13, 1927, P. L. 186, sec. 1, the legislature provided: "Permanent loss of the use of a hand, arm, foot, leg, eye, finger or thumb, shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, finger or thumb."

The amendment of June 4, 1937, P. L. 1552, sec. 1, made considerable changes in the compensation law and included the "toe" as an additional member of the body for which compensation would be allowed. It modified the provision relative to the first phalange of the thumb by stating:

"The loss of less than the first phalange of the . . . thumb . . . shall be considered equivalent to the loss of one-half of such : . . thumb . . . Provided, however, That the accident involves injury to part of the bone of the phalange."

It also provided that "the loss of one phalange or more of a . . . thumb . . . shall be considered equivalent to the loss of the entire . . . thumb . . ." An additional provision was as follows: "For the loss of any two or more such members, or the permanent loss of the use of the finger, thumb, hand, arm, foot, leg, toe, or eye, as hereinbefore provided . . ." claimant should be compensated according to the provisions of the act. This legislature also enacted as follows:

"Permanent loss of the use of a hand, arm, foot, leg, eye, toe, finger or thumb for industrial purposes, shall

be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, toe, finger or thumb."

From a reading of the provisions of the various acts of assembly which are hereinabove set forth, it is quite apparent that the legislature either narrowed or broadened the field of compensation, expressing thereby the intent of the legislature at the time the enactments were passed.

Under no act of assembly did it provide that permanent loss of the use of the first phalange of the thumb should be compensated the same as if there was a loss of the first phalange of the thumb. At no time did the legislature authorize compensation for the loss of the use of any member other than hand, arm, foot, leg, eye, toe, finger, or thumb. Under the amendment of 1939 the legislature provided: "Permanent loss of the use of a hand, arm, foot, leg, eye, finger or thumb shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, finger or thumb." The evidence shows that there is a permanent loss of the use of the first phalange of the thumb but under the act the legislature did not define this as being the same as the loss of the first phalange of the thumb. The evidence discloses that injury is not in the actual loss of the first phalange but that it has been effected by the joint between the two phalanges becoming ankylosed, impairing the use of the first phalange.

To conclude that the legislature was providing for the compensation of the loss of the use of the first phalange of the thumb would have the effect of rendering meaningless the words used by the legislature beginning with The Workmen's Compensation Act of June 2, 1915, P. L. 736, and continuing through all the amendments, where it states that the permanent loss of the use of certain members shall be the equivalent of the loss of those members. This interpretation

is contrary to the laws laid down by the courts on the interpretation of statutes, as well as that provided in the Statutory Construction Act.

In the case of Flood v. Logan Iron & Steel Co. et al., 145 Pa. Superior Ct. 206, the court at page 212 said:

"In this connection it is proper to bear in mind the legislative conception of the 'permanent loss of the use' of a member as that phrase is used in Section 306(c). As stated by this court in *Kerfonte v. Carrolltown Coal Company et al.*, 94 Pa. Superior Ct. 19: 'If the injury is permanent, resulting in the actual loss [i. e. amputation] of a [leg] or the permanent loss of its use equivalent to the loss of the [leg], the schedule fixed in Section 306(c) applies.' Moreover, the compensation therein provided for covers 'all disability' and incapacity to work, 'whether such incapacity be total, partial or no incapacity at all': *Lente v. Luci*, supra. See also *Reigle v. Sholly*, 140 Pa. Superior Ct. 153, 14 A. 2d 166, and *Moule v. Barrymore Corp.*, 124 Pa. Superior Ct. 529, 189 A. 523."

The court is, therefore, of the opinion that the legal conclusion of the Workmen's Compensation Board in attempting to bring the loss of the use of the first phalange of the left thumb within the provisions of section 306(c) of The Workmen's Compensation Act of June 2, 1915, P. L. 736, and its subsequent amendments, including the amendment of June 21, 1939, P. L. 520, is erroneous.

Counsel for defendant contends that if claimant is entitled to compensation he should look to the amendment of section 306(b) by the Act of June 21, 1939, P. L. 520, sec. 1, 77 PS §512, which provides:

"For disability partial in character (except the particular cases mentioned in clause (c)), sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the em-

ploye thereafter; but such compensation shall not be more than fifteen dollars per week. This compensation shall be paid during the period of such partial disability, not, however, beyond three hundred weeks after the seventh day of disability. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for total disability. The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident."

In reading the opinion of the Workmen's Compensation Board it is quite apparent that the only matter considered by the board, as stated by it, is: "Whether or not claimant suffered the loss of the use of his left thumb within the meaning of the Workmen's Compensation Act". Or in other words, whether this claimant came within section 306(c). The award made by the board was to that effect and it held that claimant was entitled to compensation under that section. According to the opinion no consideration was given to the question of whether or not claimant was entitled to compensation under section 306(b).

In view of the testimony which was offered by the witness, Dr. H. T. Dale, called by defendant, in which he stated that there had been a 50 percent loss of the function of the thumb of the left hand for industrial use and further stated there was no possibility of a change, and further testimony as to the use of the thumb, the court feels that as to this phase of the case the matter should be referred back to the Workmen's Compensation Board for such action by it or by the referee as may be warranted under the circumstances which it or the referee may find to exist so far as relates to the earning power of claimant being affected by the injury.

In his brief, counsel for defendant refers to the case of Scipani v. Pressed Steel Car Co. et al., 150 Pa. Superior Ct. 410. The court in its opinion, at page 414, referring to the amendment of 1939, states:

"The amendment does not abolish the distinction, established by our decisions, between earning power and wages, for the amount received is not made the exclusive measure of the ability to earn; it still may be shown that earning power, as affecting the right to compensation, is *more* than the wages received."

The court feels that insufficient consideration has been given to this case by the Workmen's Compensation Board as well as the referee as to any rights which claimant might have under section 306 (*b*), and, therefore, directs that the matter be referred back to the Workmen's Compensation Board for such action by it or by the referee as may be warranted under the circumstances which it or the referee may find to exist so far as the earning power of claimant was affected by his injury, taking into consideration, however, the ruling of the court that the claim does not come within the provisions of section 306 (*c*), and the following order is hereby entered.

### Decree

And now, to wit, June 9, 1943, the order of the Workmen's Compensation Board awarding compensation for the loss of the use of one half of the thumb is hereby vacated and set aside and the record is hereby directed to be returned to the Workmen's Compensation Board for such action by it or by the referee as may be warranted under the circumstances which it or the referee may find to exist with regard to the earning power of claimant being affected by the injury, and in accordance with such findings to dispose of the question whether or not petitioners are entitled to a suspension of the compensation payments, or whether there should be a continuation of the same and in what amount.